# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| REBECCA A. KERLIN, *et al.*, | |
| Plaintiffs, | Case No. 16-cv-7424 |
| v. | |
| CHICAGO BOARD OF ELECTIONS and JAMES M. SCANLON, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Rebecca Kerlin, William Shipley, Michelle Gale, Katherine Wuthrich, and Claire Tobin served as election monitors in Chicago during the March 15, 2016 Illinois primary election and observed the Chicago Board of Election's (BOE) audit of certain electronic voting machines. Plaintiff Nina Marie voted electronically in Chicago during the primary election's early voting period.

In July 2016, Plaintiffs sued BOE and its General Counsel, James Scanlon. Plaintiffs allege that Defendants' actions during and after the election violated their right to vote (Count I) and their rights to freedom of association and to petition the government (Count II). Plaintiffs also seek declaratory and injunctive relief (Count III). In November 2016, Defendants jointly moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' first amended complaint for failure to state a claim. [18]. This Court granted that motion for Count II only. [31].

1

Plaintiffs filed their second amended complaint in June 2017. [39]. Defendants moved to dismiss that complaint. [41]. For the reasons explained below, Defendants' motion is granted.

I.  **Background**

This Court presumes familiarity with, and incorporates by reference, its opinion partially granting Defendants' first motion to dismiss. [31]. Thus, this section describes only new developments since that last opinion.

After this Court partially granted Defendants' first motion to dismiss, Defendants filed a motion asking this Court to reconsider that decision. [33]. Defendants asserted that, due to their lack of clarity in briefing the first motion to dismiss, this Court made "an error of apprehension" in assessing the relevant provisions of Illinois election law. *Id.* at 2. Defendants argued that, under Illinois law, regardless of how BOE employees conducted the 5% post-election test or what the test revealed, the test could not have changed the primary election results. *Id.* Thus, Defendants reasoned, the 5% test did not affect anyone's right to vote, and the complaint should have been dismissed with prejudice. *Id.*

This Court held a hearing in May 2017 on Defendants' motion to reconsider and granted the motion in part, as stated in open court. [37]. During the hearing, Plaintiffs conceded that BOE's alleged violations "would have to affect the election results and not simply an aspect of the audit" for their claims to be justiciable in federal court. [41-1] at 9; *see also id.* at 13 (Among other things, Plaintiffs agreed with the following question from this Court: "If the audit doesn't change the

2

election, then you agree that there's a serious problem with your complaint, correct?"). Plaintiffs orally moved to amend their complaint again while acknowledging that the second amended complaint would "still be based on what transpired at the post-election audit." *Id.* at 12. This Court granted the oral motion to file an amended complaint, *id.*, and Plaintiffs filed their second amended complaint a month later. [39].

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss does not test the merits of a case. *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). To survive a motion to dismiss, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must also contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating a complaint, this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. This Court is not, however, required to accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson*, 714 F.3d at 436.

### III. Analysis

Plaintiffs claim that BOE violated their right to vote by, among other things, improperly changing votes to produce an errorless 5% test count and "canvassing and certifying" inaccurate election results as official, despite knowing that those results were inaccurate. [39] ¶ 41. Defendants counter that they have no power to count ballots or certify election results other than the returns that election officers complete. [41] at 3. More fundamentally, Defendants argue again that the results

4

of the 5% test could not possibly have changed the election results, so the 5% test did not affect Plaintiffs' right to vote in any way. *Id.* at 1.

### A. Illinois Election Law

Two provisions of Illinois election law largely govern the outcome of this case: 10 ILCS 5/24C-15 and 10 ILCS 5/22-9.1. The latter provision matters only because section 24C-15 refers to it, so this Court will address section 24C-15 first. To interpret an Illinois statute, this Court must apply Illinois statutory construction principles. *See In re Crane*, 742 F.3d 702, 707 (7th Cir. 2013). Illinois courts focus on determining and giving effect to the legislature's intent when interpreting a statute. *Gen. Motors Corp. v. Pappas*, 950 N.E.2d 1136, 1146 (Ill. 2011). Statutory language, given its plain meaning and "construed in connection with every other section" of the statute, best demonstrates the legislature's intent. *Id.* When statutory language is unambiguous, courts must interpret the language consistent with its plain meaning. *Id.; see also United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016) ("When a statute is unambiguous, our inquiry starts and stops with the text.") (internal quotation marks omitted).

Section 24C-15 covers multiple distinct subjects, as previewed in its title: "Official Return of Precinct; Check of Totals; Audit." This Court addresses each subject in the same order that the statute presents them.

#### 1. Official Return of Precinct

Section 24C-15 begins by explaining that the precinct return generated by the Direct Recording Electronic Voting System (DREVS) machines "shall constitute

5

the official return of each precinct." That DREVS return lists the number of ballots cast and the votes cast for each candidate and each public question. *Id.* Separate from the DREVS return, the election authority must provide voter registration, ballot application, and vote totals for each precinct. *Id.*

### 2. Check of Totals

Next, Section 24C-15 orders the election authority to check those registration, application, and vote totals against the DREVS return's totals. *Id.* If there is "an obvious discrepancy" between the DREVS return's totals and the election authority's totals, the election authority "shall have the ballots for that precinct audited to correct the return." *Id.*

Neither the DREVS return's totals nor the election authority's totals come from the 5% test. In fact, the statute does not make its first mention of the 5% test until much later in the text. § 24C-15. What is more, the procedures for auditing and correcting the return "shall apply prior to *and after*" the results are proclaimed, but the 5% test must occur *before* the proclamation, as explained below. *Id.* Construing this part of section 24C-15 within the context of the full statute, *Pappas*, 950 N.E.2d at 1146, shows that the instruction "to correct the return" is unrelated to the 5% test, given the clear differences in both chronology and metrics.

Section 24C-15 then provides that the "certificate of results, which has been prepared and signed by the judges of election after the ballots have been tabulated, shall be the document used for the canvass of votes for such precinct." The statute requires an audit to correct the return if, during the canvass of votes: (1) a

6

discrepancy exists between the certificate of results and the unofficial results; or (2) a discrepancy exists between the certificate of results and the totals reflected on the certificate of results. *Id.* Again, neither the certificate of results nor the unofficial results comes from the 5% test under section 24C-15. Thus, this second instruction "to correct the return" remains unrelated to the 5% test.

Likewise, BOE possesses no authority to change the election results based upon the 5% test. As a statutory creature, BOE derives its powers "solely from a legislative grant of authority." *Geer v. Kadera*, 671 N.E.2d 692, 698 (Ill. 1996).[1] Section 24C-15 authorizes BOE to canvass votes solely with the certificates of results prepared by judges of election, not with BOE's findings during the 5% test. Plaintiffs correctly point out that section 24C-15 mentions correcting returns in multiple places, but those corrections are not driven by, or connected to, the 5% test.

### 3. Five Percent Test

Lastly, section 24C-15 sets forth the 5% test, beginning as follows: "Prior to the proclamation, the election authority shall test the voting devices and equipment in 5% of the precincts within the election jurisdiction, as well as 5% of the voting devices used in early voting." Notably, given the structure of the statute (which lacks headers and other obvious dividers between topics), this sentence begins the first new paragraph in the statute. That new paragraph effectively separates the 5% test procedures from the result-verification provisions described above.

---

[1] *Geer* mentions canvassing boards, 671 N.E.2d at 698, which the Illinois legislature abolished in 10 ILCS 5/1-8. Any mentions of canvassing boards in cases or statutes now refer to the election authority with jurisdiction over the political subdivision. § 1-8. For Chicago, that means BOE.

7

Next, the statute describes the procedures both for conducting the test and choosing which devices to test. *Id.* The election authority must "print the results of each test count" and if "any error is detected, the cause shall be determined and corrected, and an errorless count shall be made prior to the official canvass and proclamation." *Id.* Read in context, the last sentence directs the election authority—in the event of an error—to correct the test count, not to change election results from the official canvass to match the test count. If the election authority cannot conduct an errorless test count, or if the authority detects and corrects an error, section 24C-15 dictates that the authority "shall immediately prepare" a report "explaining the test results," which will be made publically available. *Id.*

Most importantly for this case, section 24C-15 ends by defining the practical significance of the 5% test: "The results of this post-election test shall be treated in the same manner and have the same effect as the results of the discovery procedure set forth in Section 22-9.1 of this Code." *Id.* In turn, section 22-9.1 provides that the results of the discovery procedure:

> shall not be certified, used to amend or change the abstracts of the votes previously completed, used to deny the successful candidate for the same office his certificate of nomination or election, nor used to change the previously declared result of the vote on a question of public policy.

Simply put, the plain text of section 22-9.1 unambiguously says that the discovery procedure's results, and thus the 5% test's results, cannot change *election results*. Under Illinois law, the only outcome of an error in the 5% test count is a publically available written report. § 24C-15.

## B. Count I

In Count I, Plaintiffs claim that BOE violated their right to vote by, among other things, changing votes to produce an error-free 5% test count and certifying results that it knew were inaccurate. Upon review of section 24C-15, however, this Court rejects Plaintiffs' construction of the statute and their claim that the 5% test affected any election results. For example, Plaintiffs rely upon language from the "Check of Totals" section requiring the election authority to "have the ballots for that precinct audited to correct the return" in the face of "an obvious discrepancy regarding the total number of votes cast in any precinct." [42] at 5. But as the statutory language noted above demonstrates, the 5% test is distinct from the other areas covered in section 24C-15. Essentially, Plaintiffs cite inapplicable language out of context, and then try to apply it indiscriminately to the 5% test. The law requires a different approach to statutory interpretation.

In the end, the "serious problem" with Plaintiffs' complaint that this Court identified during the May hearing persists here. [41-1] at 13. Even taking all of Plaintiffs' allegations as true and drawing all inferences in Plaintiffs' favor, *Iqbal*, 556 U.S. at 678, Plaintiffs do not allege a plausible claim that BOE violated their right to vote. No matter how flagrantly BOE might have doctored the numbers during its 5% test, that test's results could not possibly have affected the election results under Illinois law. § 22-9.1. Accordingly, this Court dismisses Count I.

## C. Count II

This Court dismissed Count II in its prior opinion. Plaintiffs replead Count II here without any substantive changes solely to preserve their record for appeal. [39] at 19. Thus, Count II is dismissed for the same reasons stated in this Court's prior opinion. [31] at 18–22.

D.  **Count III**

In Count III, Plaintiffs request declaratory judgment against Defendants on various questions, such as whether BOE properly performed the 5% test under Illinois law; Plaintiffs also ask this Court to enjoin BOE from further violating Illinois law. [39] ¶¶ 76, 83. This Court may entertain a claim for declaratory or injunctive relief only when a case or controversy exists between the parties, "consistent with the Constitution's general limitation on the jurisdiction of the federal courts." *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 451 (7th Cir. 2016); *see also Simic v. City of Chicago*, 851 F.3d 734, 740 (7th Cir. 2017).

With the dismissal of Counts I and II, no federal case or controversy remains between these parties. Plaintiffs failed to state a claim that Defendants deprived them of any federal constitutional rights. While Plaintiffs might have remedies under Illinois law if BOE behaved as alleged, that issue is not for this Court to resolve here. Under 28 U.S.C. § 1367(c)(3), this Court also declines to exercise jurisdiction over Count III, because this Court has "dismissed all claims over which it has original jurisdiction." Count III is dismissed.

### E. Leave to Replead

Defendants argue that this Court should dismiss Plaintiffs' second amended complaint with prejudice, [41] at 2, and Plaintiffs do not request leave to replead any claims. *See* [42]. Defendants' unopposed request is granted.

Rule 15(a) dictates that trial courts "should freely give leave [to amend] when justice so requires," but that command can be outweighed by factors such as undue delay, bad faith, and futility. *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 689 (7th Cir. 2014). Amending the complaint again would be futile here, so justice does not require giving leave to amend. Plaintiffs did not attempt to bolster Count II in their second amended complaint even though this Court previously dismissed that count, and Count I turns purely upon statutory construction. By extension, amending Count III would be futile, because Count III depends upon the other counts to establish a case or controversy between the parties. In light of the above, this Court does not grant Plaintiffs leave to replead any claims.

### IV. Conclusion

Defendants' motion to dismiss [41] is granted with prejudice. Civil case terminated.

Dated: November 13, 2017

Entered:

_____
John Robert Blakey
United States District Judge